UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:24-cr-496-VMC-AEP

JACK WILLIAM ROCKER

### UNITED STATES' SENTENCING MEMORANDUM

The Defendant, Jack William Rocker, amassed a collection of more than eight thousand videos and images of children—including infants and toddlers—being raped and tortured. These videos contained some of the most horrific, evil content available on the Internet, depicting the most vulnerable in our society being harmed in unspeakable ways. Yet the Defendant stored these videos and systematically organized them, ensuring that he was able to revictimize these children any time he desired. For his actions, the United States respectfully requests that the Court sentence the Defendant to a guideline sentence of 121 months imprisonment, with a lifetime of supervised release.

**I.  Background**

On November 15, 2024, the United States filed an Information charging the defendant with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Doc. 1. The defendant waived his right to be charged by indictment and on December 16, 2024, pleaded guilty to the Information. Docs 3 & 10. The Court accepted the defendant's guilty plea and scheduled sentencing to take place March 14, 2025. Doc. 19.

1

II. **Presentence Investigation Report**

On March 7, 2025, U.S. Probation issued its final Presentence Investigation Report ("PSR"). Doc. 31. It determined the defendant's applicable guidelines range for the underlying offenses as 97 to 121 months, based on an adjusted total offense level of 30 and a criminal history category I. *Id*. at 68. Count One is punishable by a term of imprisonment of up to 20 years and the applicable period of supervised release is five years to life. *Id*. at 67; 70. For the reasons that follow, this Court should adopt the PSR's facts and guideline calculation. The defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands, at a minimum, a guidelines sentence. He poses a danger to children in the community and that danger is unlikely to abate over time.

III. **Argument for a Guideline Sentence**

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a high-end guideline sentence.

### A. Nature and Circumstances of the Offense

On January 19, 2024, the Federal Bureau of Investigation conducted a search of Rocker's residence located in the Middle District of Florida. The FBI seized Rocker's iPhone, iPad, thumb drive, and Acer laptop. The FBI confirmed that Rocker possessed CSAM (child sexual abuse material) on his iPhone, thumb drive, and laptop. At this time, the FBI has determined that Rocker's devices contain over 8,300 images and videos of CSAM. These images and videos include depictions of the sexual abuse of infants and toddlers, masochistic sexual behavior, and bestiality. For example, Rocker possessed the following video described as follows: This video is approximately 27 minutes and 16 seconds in length. It depicts a topless female infant wearing a diaper while laying on her back on a bed. A topless female adult, wearing a facemask and underwear, removed the infant's diaper and rubbed ice on the infant's

abdomen and vagina, causing the infant to cry. The adult female placed the ice inside the infant's vagina and anus, while the infant continued to cry. Later in the video, the adult female retrieved what appeared to be an approximately two-foot long by one-inch-wide round rod and cloth material. The adult female tied the infant's feet to the rod while the infant continued to cry. The adult female hung the infant upside down over the bed by her feet, which were attached to the rod. The adult female taped the infant's hands down to the bed with light-colored adhesive tape. The adult female also taped the infant's mouth with the same light-colored adhesive tape. The adult female began to openhand slap the infant's vagina while the infant was hanging upside down. Later in the video, the adult female held a lit candle near the infant's legs and vagina. During the video, the adult female rubbed the infant's vagina with a dark colored dildo and then inserted the dildo into the infant's vagina multiple times. *See also* PSR ¶ 12 (description of CSAM possessed).

  The nature and circumstances of this case are abhorrent. Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court."). Possession of CSAM is not a victimless crime. Each child depicted in those videos and images is a victim – a victim who has to live with the sexual abuse they endured that was documented and put on the internet to live in perpetuity. As the Eleventh Circuit explained in *United States v. Irey*: "the greater the harm the more

4

serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d 1160, 1206 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011). Because "[t]he seriousness of the crime varies directly with the harm it causes or threatens" this Court should impose a high-end guidelines sentence of 121 months. *Id.* at 1206.

The defendant's graphic CSAM collection revictimized countless children. He consumed media depicting child sex abuse with no regard to the broken lives depicted in the images and videos that he so willingly shared and helped create. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children . . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation . . . ." *Ferber*, 458 U.S. at 758–59 nn. 9–10 (citations omitted). A high-end guidelines sentence, at a minimum, is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

### B. History and characteristics of the defendant

Rocker's actions were calculated and premeditated, not a solitary lapse of judgement. Rocker was an active member of a Nihilistic Violent Extremists group called 764.

**Nihilistic Violent Extremists**

Nihilistic Violent Extremists (NVEs) are individuals who engage in criminal conduct within the United States and abroad, in furtherance of political, social, or

religious goals that derive primarily from a hatred of society at large and a desire to bring about its collapse by sowing indiscriminate chaos, destruction, and social instability. NVEs work individually or as part of a network with these goals of destroying civilized society through the corruption and exploitation of vulnerable populations, which often include minors.

NVEs, both individually and as a network, systematically and methodically target vulnerable populations across the United States and the globe. NVEs frequently use social media communication platforms to connect with individuals and desensitize them to violence by, among other things, breaking down societal norms regarding engaging in violence, normalizing the possession, production, and sharing of CSAM and gore material, and otherwise corrupting and grooming those individuals towards committing future acts of violence.

Those individuals are targeted online, often through synchronized group chats. NVEs frequently conduct coordinated extortions of individuals by blackmailing them so they comply with the demands of the network. These demands vary and include, but are not limited to, self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings and others, acts of violence, threats of violence, suicide, and murder.

Historically, NVEs systematically targeted vulnerable individuals by grooming, extorting, coercing, and otherwise compelling through force, or the threat of force, the victims to mutilate themselves or do violence, or threaten violence, to others and either film or photograph such activity. The members of the network have edited compilation

photographs or videos of targeted individuals, shared the photographs and videos on social media platforms for several reasons, including to gain notoriety amongst members of the network, and spread fear among those targeted individuals for the purpose of accelerating the downfall of society and otherwise achieving the goals of the NVEs.

NVEs networks have adopted various monikers to identify themselves. The networks have changed names over time, which has led to the creation of related networks. Although the networks change names and use a variety of different social media platforms, the core members and goals remain consistent and align with the overarching threat of NVE.

### 764 and related networks

"764" and related groups ("764") are NVEs who engage in criminal conduct within the United States and engage with other extremists abroad. The 764 network's accelerationist goals include social unrest and the downfall of the current world order, including the United States Government. Members of 764 work in concert with one another towards a common purpose of destroying civilized society through the corruption and exploitation of vulnerable populations, including minors.

### Rocker's 764 Involvement

Rocker's involvement with 764 was housed on his thumb drive, which law enforcement forensically searched. During that search, law enforcement observed that, Rocker organized his obscene collection into folders by categories such as, "764", "child-gore", "kkk-racist", "self harm", "rape", and "trophies," as some examples. *See*

*Exhibit A*. Within each folder were images and videos self-explanatory to the folder title. Of note, the "trophies" folder contained girls who had written or carved Rocker's 764 name or variations of it on their bodies. Rocker actively participated in the grooming of young girls and encouraged and succeeded in causing young girls to write or carve his name on themselves. Additionally, this defendant, by his own admission, when he was a juvenile, shared images and videos of 764 content as well as CSAM. Although Rocker denied involvement in 764 after his 18th birthday, forensic evidence demonstrated he entered 764 social media chat groups after his 18th birthday.

The PSR documents the defendant's history and characteristics, including his parents' divorce and that his father was verbally and mentally abuse. PSR ¶ 44. Without diminishing the defendant's childhood trauma, the PSR notes Rocker still loves his father, and both his parents have been very supportive through these charges. PSR ¶ 46. There is nothing so unique, however, about the defendant's history or upbringing to explain these charges other than his interest in furthering the objectives of 764.

Despite his age, Rocker's actions are such that he presents a danger to the community. His focus on particularly horrific child rape videos, and the humiliation and victimization of the most vulnerable in our society, underscores this fact. Further, 764 actors like Rocker weaponize the most horrific CSAM material and use it to desensitize others to groom them for further violence. This is evidenced by the images Rocker procured of girls with his social media handle drawn or carved into their bodies.

8

### C. Adequate deterrence and the need to protect the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

Courts have recognized receipt and possession of child sexual assault material are harmful crimes warranting harsh sentencings. *United States v. Lichtman*, 683 Fed. Appx. 873 (11th Cir. 2017) (Upholding a 151-month sentence); *United States v. Wayerski*, 624 F.3d 1342, 1354-55 (11th Cir. 2010) (holding it was not unreasonable for the district court to consider the defendants' child pornography offenses to be serious and deserving a significant sentence). The Court in *Wayerski* also noted that "[t]hose who receive and exchange child pornography create a demand that influences the production of child pornography and the attendant physical and emotional injury to children." *Id*. at 1354.

This Court should also impose a high-end guidelines sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey,* 612 F.3d at 1208 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). Rocker's active involvement in the 764 group should also be taken into consideration here. A high-end guidelines sentence, at a

9

minimum, would send a strong warning to other individuals currently involved in or considering similar conduct.[1]

### D. Defense request for a departure pursuant to USSG § 5H1.1

The defense seeks a departure based upon the defendant's age, pursuant to USSG § 5H1.1. The guidelines state that, "certain risk factors may affect a youthful individual's development into the mid-20s and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood." *Id*.

In this case, there are no extraordinary conditions related to the defendant's age warranting a departure. The defendant's actions in this case were morally repugnant, reprehensible, and violated societies most vulnerable, as evidenced by Rocker's extensive collection of babies being raped. The ranks of 764 and related groups are full

---

[1] In similar 764-related cases, defendants who pled guilty have acknowledged that the terrorism enhancement, U.S.S.G. § 3A1.4 application note 4, applies. *See United States v. Tinajero*, 3:23-cr-00112-CRS (WDKY). Though the government is not advocating for the upward-departure provision in this case, the government maintains that the provision could be applied. Application Note 4 to U.S.S.G. § 3A1.4 states an upward departure is warranted if, among other things, "the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B)." While the Court need not decide the issue here, the upward departure under U.S.S.G. 3A1.4, note 4, will be applied in future cases, given, in part, the "significant threat nexus between terrorist and violent extremism content . . . and child sexual exploitation and abuse material" and 764's "ultimate goal . . . to groom individuals for acts of terroristic violence." Global Network on Extremism & Technology, *764: The Intersection of Terrorism, Violent Extremism, and Child Sexual Exploitation*, January 19, 2024, *available at* <https://gnet-research.org/2024/01/19/764-the-intersection-of-terrorism-violent-extremism-and-child-sexual-exploitation/> (last visited March 12, 2025), attached hereto as *Exhibit B*.

of minors engaged in similar horrific conduct, and their age is not a reason to depart downward.

## IV. Conclusion

This Court should sentence the defendant to a 120-month guidelines sentence of imprisonment. Nothing in the offense conduct or the defendant's history and characteristics warrants a downward departure. A guidelines sentence is the only reasonable sentence because it is the only sentence that reflects the seriousness of the defendant's crimes and relevant conduct, provides just punishment, fully protects children in the community, and promotes respect for the law.

Respectfully submitted,

SARA C. SWEENEY
Acting United States Attorney

/s/ Karyna Valdes
Karyna Valdes
Assistant United States Attorney
Florida Bar No. 0122261
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Karyna.Valdes@usdoj.gov

/s/ Ilyssa M. Spergel
Ilyssa M. Spergel
Assistant United States Attorney
Florida Bar No. 0102856
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:   (813) 274-6300
Facsimile:   (813) 274-6178
E-mail: ilyssa.spergel@usdoj.gov